UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRYAN REUSS,

        Plaintiff,

v.                                 Case No:  6:15-cv-805-Orl-28GJK

ORLANDO HEALTH, INC.,

        Defendant.

---

## ORDER

In this putative class action, Dr. Bryan Reuss alleges in a single-count complaint (Doc. 1) that his employer, Orlando Health, Inc. ("the Hospital"), breached a fiduciary duty by failing to either file a FICA tax refund claim on behalf of him and others or advise them of their opportunity to seek a FICA tax refund. In response to the Complaint, the Hospital filed a motion to dismiss (Doc. 9), contending: (i) the Hospital did not have a fiduciary relationship with Dr. Reuss, (ii) Dr. Reuss's claims are barred by Florida's statute of limitations, and (iii) Dr. Reuss's claim is actually a tax refund suit and is therefore preempted by 26 U.S.C. § 7422. The Hospital's motion has merit and must be granted.

## I.    Background

This case requires some understanding of the Federal Insurance Contributions Act ("FICA"). The Eleventh Circuit has explained:

> FICA establishes a tax that is assessed by the federal government based on wages paid to workers, and the money collected from the FICA tax is used to fund the Social Security Trust Fund. Under a traditional employer-employee relationship, an employer withholds from the employee's paycheck a percentage of the employee's wages based on the applicable FICA wage rate. The money withheld from the employee's paycheck is then paid to the government, making it, in essence, a tax paid by the

> employee. At the same time, the employer itself pays a FICA "excise tax" that is equal in amount to the percentage wage rate paid by the employee. In a traditional employer-employee relationship, therefore, the employee pays half of the total FICA tax owed and the employer pays the other half.

McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718, 721 (11th Cir. 2002). Dr. Reuss is currently employed by the Hospital as a surgeon, but during the time period relevant to this suit—July 1, 2000 to June 30, 2005—he worked for the Hospital as a medical resident. (Compl. at 1). During his residency, the Hospital withheld FICA taxes from Dr. Reuss's wages and, in accordance with the requirements of IRS regulations, submitted those taxes, along with the Hospital's own contributions, to the IRS. (Id. at 2–3).

Dr. Reuss's former status as a "medical resident" is important because the IRS excepts certain relationships, including students working for schools, from the definition of "employment" and therefore from the obligation to pay FICA taxes. United States v. Mount Sinai Med. Ctr. of Fla., Inc., 486 F.3d 1248, 1250 (11th Cir. 2007). The "student exception" "provides that 'the term "employment" . . . shall not include . . . service[s] performed in the employ of . . . a school, college, or university . . . if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university[.]'" Id. (alterations in original) (quoting 26 U.S.C. § 3121(b)(10)).

"Historically, the [IRS] interpreted the [s]tudent [exception] to exclude medical residents and fellows [from the exception's coverage]." Childers v. N.Y. & Presbyterian Hosp., 36 F. Supp. 3d 292, 299 (S.D.N.Y. 2014). "Therefore, the IRS required all hospitals to withhold FICA taxes from the paychecks of their residents and fellows." Id. Additionally, a corresponding student exception existed in the Social Security Act, and the Social Security Administration ("SSA") consistently held that medical residents were not "students" under that exception. See Minnesota v. Apfel, 151 F.3d 742, 747–48 (8th

Cir. 1998).  But, in 1998, that traditional interpretation was called into question when the Eighth Circuit held that the "SSA could not categorically exclude residents from student status."  Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 49 (2011) (discussing Apfel); see Apfel, 151 F.3d at 747–48.  After Apfel, some hospitals filed FICA tax refund claims with the IRS on the grounds that medical residents qualified as students.  Mayo Found., 562 U.S. at 49.

Confusion as to the status of medical residents resulting from Apfel was cleared up in 2004 when the Treasury Department issued a new regulation, Treas. Reg. § 31.3121(b)(10)-2(d)(3)(i), providing that an employee who performs services of a "full-time employee"—that is, who is normally scheduled 40 or more hours per week—is not a "student" exempt from FICA taxation.  Mayo Found., 562 U.S. at 50 (citing 69 Fed. Reg. 8605 (2004) and Treas. Reg. § 31.3121(b)(10)-2(d)(3)(i)).  Because a medical resident's normal work schedule calls for the resident to work more than 40 hours per week, the new rule effectively ended the student exception's applicability to medical residents for services performed after April 1, 2005.  See Treas. Reg. § 31.3121(b)(10)-2 (2004).

Despite the 2004 regulation, in 2010, the IRS decided that it would honor claims for FICA tax refunds filed before April 1, 2005 on behalf of medical residents under the student exception.  IRS to Honor Medical Resident FICA Refund Claims, I.R.S. News Release, IR-2010-25, 2010 WL 703144, at *1 (Mar. 2, 2010).  Because there is a three-year statute of limitation for FICA tax refunds, all claims filed after the 2010 decision were time-barred.  Only pending claims that had been timely filed qualified—so-called "protective FICA tax refund claims."

Many hospitals—including the Hospital here—had filed such protective FICA tax refund claims in case the IRS decided to change its policy and classify medical residents as students.  The Hospital filed a protective FICA tax refund claim in 2004 on behalf of itself and its medical residents for FICA taxes paid in the year 2000, but it did not file protective claims for itself or its residents for the years 2001–2005. (Compl. at 4).

IRS Form 941-C requires that employers seeking a FICA tax refund on behalf of employees certify that either its affected employees gave their written consent for the employer to file the tax refund claim or that an unsuccessful attempt was made to locate the employee.  (Id. at 5).  Instead of obtaining consent from its employees, when the Hospital filed its protective claims in 2004 it included a note with the Form 941-C stating that the Hospital was "in the process of obtaining the written consent . . . from each individual to obtain the refund of the employee share of overpaid FICA taxes on their behalf." (Id.).  The Hospital did not seek such consent from Dr. Reuss. (Id.).  In 2012, the IRS disbursed to the Hospital the FICA tax refund for the year 2000. (Id.).  At that time, the Hospital distributed the employee portion of the refund to the eligible medical residents. (Id.).  Dr. Reuss asserts that his receipt of the refund was when he first learned that a FICA tax refund opportunity existed for the years 2000–2005. (Id.).

In 2013, Dr. Reuss sued the United States seeking a refund of the FICA tax that was withheld for the years 2001–2005.  (Case No. 6:13-cv-01510-ACC-GJK; see also Notice of Pendency of Other Actions, Doc. 10).  The parties settled that case and it was dismissed with prejudice.  (Docs. 33 & 34 in Case No. 6:13-cv-01510-ACC-GJK).  Nonetheless, in May 2015, Dr. Reuss commenced this action claiming that the Hospital "breached [its] fiduciary obligation by failing to disclose or otherwise act on the existence

4

of the 2001–[2005] 'refund opportunity.'" (Compl. at 9).  Dr. Reuss claims that he had "no way of discovering [his] FICA overpayment unless [the Hospital] properly complie[d] with the IRS-required time limits on the filing of protective claims" or obtained the proper consent from its employees regarding the 2000 FICA tax refund claim.  (Id. at 8).  He alleges that the Hospital's acts prevented him from learning that refund opportunities existed for the years 2001–2005 and that by the time he found out about the refund opportunity, the FICA tax refund statute of limitations period had elapsed.  (Id. at 9).  By this suit, Dr. Reuss seeks to recover from the Hospital an amount equivalent to that contributed on his behalf by the Hospital for FICA taxes for the years 2001–2005.  (Id.)

## II.    Legal Standard[1]

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, a court must view the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto, Fed. R. Civ. P. 10(c).  See also GSW, Inc. v. Long Cty., Ga., 999 F.2d 1508, 1510 (11th Cir. 1993).  "Dismissal is warranted under 12(b)(6) if, assuming the truth of the factual allegations of the

---

[1] The Hospital brings its motion to dismiss under both Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim) and 12(b)(1) (lack of subject matter jurisdiction).  However, as noted later in this Order, I conclude that all of the Hospital's arguments are 12(b)(6) arguments.  Thus, only the 12(b)(6) standard is presented here.

plaintiff's complaint, there remains a dispositive legal issue which precludes relief." Schneider v. Parker, No. 6:09-cv-1089-ORL-35, 2011 WL 722759, at *2 (M.D. Fla. Feb. 23, 2011).

"Whether a fiduciary duty exists is necessarily fact-specific to the particular case," and "[t]herefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)" because it "is often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship." Childers, 36 F. Supp. 3d at 300 (internal quotations omitted).  Nonetheless, dismissal is appropriate here because I conclude that Dr. Reuss will be unable to prove the existence of a fiduciary relationship.

## III.   Discussion

### A.   Whether a Fiduciary Duty Exists

At issue is whether a fiduciary duty existed between the Hospital and Dr. Reuss that required the Hospital to file FICA tax refund claims for the years 2001–2005 on Dr. Reuss's behalf or to notify him of the refund opportunity. I find that the allegations in the Complaint do not give rise to such a fiduciary duty.

To prevail on a claim for breach of fiduciary duty in Florida, Dr. Reuss must establish, among other elements, the existence of a fiduciary duty. See Crusselle v. Mong, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011) ("The elements of a cause of action for breach of fiduciary duty are (1) the existence of a duty, (2) breach of that duty, and (3) damages flowing from the breach."). "Where, as here, there is not an express fiduciary relationship, one may be implied in law based on the specific factual situation surrounding the transaction and the relationship of the parties." Id. "A fiduciary relationship exists when one is under a duty to act, or give advice, for the benefit of another upon matters within the scope of that relation." Id. (citing Doe v. Evans, 814 So.

6

2d 370, 374 (Fla. 2002)). "An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party." Id. (quoting Masztal v. City of Miami, 971 So. 2d 803, 809 (Fla. 3d DCA 2007)). "'The relation and duties involved need not be legal; they may be moral, social, domestic or personal.'" Evans, 814 So. 2d at 374 (quoting Quinn v. Phipps, 133 So. 419, 421 (1927)). "'If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief.'" Id. (emphasis removed) (quoting Quinn, 113 So. at 421).

Dr. Reuss relies on two cases in support of the alleged existence of a fiduciary duty, stating that "Mills and Childers provide the outline for [his] claims." (Pl.'s Mem. in Opp'n, Doc. 16, at 8 (citing Mills v. United States, 890 F.2d 1133 (11th Cir. 1989); Childers, 36 F. Supp. 3d at 292)). Dr. Reuss's sole argument is that under "Childers and Mills, [the Hospital] assumed a fiduciary relationship with [Dr.] Reuss when it undertook to recover its own and his year 2000 FICA tax refund."[2] (Doc. 16 at 10 (emphasis in original)).

### 1.   Childers

The facts in Childers are distinct from the facts in this case. In Childers, the hospital did not file a FICA tax refund claim,[3] but it settled an unrelated tax dispute with

---

[2] Dr. Reuss concedes that the mere existence of an employer-employee relationship does not necessarily give rise to a fiduciary relationship between the parties. (Doc. 16 at 12 ("[The] cases cited by [the Hospital] . . . deal with claims of fiduciary relationships arising out of an employee-employer setting, and are not relevant to the court's analysis here.")).

[3] Dr. Reuss asserts in his opposition memorandum that the hospital in Childers filed a refund claim, but this is inaccurate. Dr. Reuss's confusion about whether the hospital in Childers filed refund claims may stem from that case's relatively complicated

the IRS. 36 F. Supp. 3d at 300. The hospital never sought or obtained consent from its residents before entering into the settlement, nor did it notify the medical residents that they could file their own FICA tax refund claims. Id. As a part of the settlement, the hospital used the residents' "potential refund claims as a bargaining chip," id. at 308, "agree[ing] to give up its right to seek refunds for . . . all FICA taxes paid on behalf of its medical residents," id. at 300. The court construed the value that the hospital gained from the settlement to be a de facto refund of taxes paid in part by the residents. Id. at 308. The hospital retained all the monetary benefit of the refund but failed to pass any benefit along to the residents. Id. at 300. These facts gave rise to a fiduciary duty on the part of the hospital to return to the residents their share of the refund. Id. at 308. Here, by contrast, the Hospital requested a FICA tax refund for the year 2000, which the IRS honored. (See Compl. ¶ 17). Upon receipt of the refund, the Hospital carried out its duty by distributing to the affected residents their share of the refund. (Id.).

Emphasizing that its decision was based on the unique facts of the case, the Childers court made clear that "[t]he [h]ospital's failure to file FICA refund claims on its own would not give rise to [the medical residents' claim for breach of fiduciary duty]." Id. at 319. The lesson of Childers is simple—when an employer files for a refund of FICA taxes, it has a fiduciary duty to "ensure its employees receive the benefit" of their fair share of any refund received. Id. at 307.

---

facts. The hospital in Childers employed medical residents from both Cornell Medical School and Columbia Medical School. Childers 36 F. Supp. 3d at 298. The hospital filed protective FICA refund claims on behalf of its medical residents from Columbia Medical School but did not file claims on behalf of its residents from Cornell Medical School. Id. at 300. The plaintiffs in Childers were only from Cornell Medical School. Id. at 298. Any fiduciary duty that may have existed did not arise from the hospital's filing for a tax refund, because the hospital never filed a refund claim on behalf of the plaintiffs.

Childers does not, however, support the proposition that the Hospital had a fiduciary duty to ensure that its employees received the benefit of FICA tax refunds where the Hospital chose not to file for a refund on its own behalf or where the Hospital did not "appropriate[] [the] money for itself" Id. at 308.  On this point, the court was emphatic:

> [T]he benefit gained by the [h]ospital was monetary and came directly from the IRS as a result of a bargained-for exchange. This is in no way analogous to an employer who decides, for example, not to file for a refund due to administrative costs or challenges, and in fact is more analogous to an employer who actually files for a refund [but appropriates the proceeds for itself]. Moreover, as explained in the Opinion, the benefit gained by the [h]ospital likely included value from the IRS in consideration of [the medical residents'] potential claims, which would not be the case if an employer simply decided not to file for a refund without bargaining with the IRS.

Id. at 318.

Therefore, the rationale of Childers is contrary to Dr. Reuss's argument.

    2.   *Mills*

Like Childers, Mills is clearly distinguishable from this case and does not form a basis for recognition of a fiduciary duty on the part of the Hospital.  In Mills, an employer filed for its own refund but did not request a refund on behalf of its employee.  Mills, 890 F.2d at 1134.  In making the request, the employer failed to obtain the employee's consent as required by IRS Form 941-C or otherwise give notice to the employee.  Id.  By the time the employee discovered his overpayment and sought a refund, the statute of limitations had run.  Id.  The employee then filed a claim against the IRS, arguing that the statute of limitations was tolled by the employer's claim for a refund.  Id.

The Eleventh Circuit agreed with the employee, reasoning:

> [T]he FICA statutory system essentially imposes a duty on the employer to act on both its own and its employee's behalf.  The statutes require that an employer make contributions on both its own and the employee's behalf to a *single* account.  An employer's proper completion and filing of Form 941-

> C . . . envisions the imposition of a dual duty on the employer to act on both its own and an employee's behalf.  Thus when [the employer] notified the IRS that it was seeking a credit of FICA contributions it made on [the employee's] behalf, the IRS was placed on notice that [the employee] was similarly entitled to a refund of his contributions to that account.

Id. at 1136 (emphasis in original).  Because of the dual duty of the employer to act on behalf of the employee by filing Form 941-C, the IRS was on notice that the employee was also entitled to a refund.  Id.  This was enough to toll the statute of limitations and allow the employee to proceed with his claim.  Id.

IRS Form 941-C is "meant to ensure that employees are treated fairly and receive the benefit of any refund [obtained by their employers]."  See United States v. Allen, No. 1:91CV0244, 1992 WL 437652, at *5 (N.D. Ohio Nov. 24, 1992); see also id. n.2 (discussing courts' concern "that employers will profit from erroneously withholding FICA tax from the wages of their employees then subsequently recovering refunds of the amounts withheld without informing, or repaying, the employees").  Mills recognizes this, reasoning that when an employer files its own FICA tax refund claim, it has a statutory duty to also file a refund claim on behalf of its employees.  See 890 F.2d at 1136 (discussing the FICA statutory system); accord Treas. Reg. §31.6402(a)-2(a)(ii) (2013) ("No refund or credit . . . for employer tax will be allowed unless the employer has first repaid or reimbursed its employee or has secured the employee's consent to the allowance of the claim for refund and includes a claim for the refund of such employee tax.").  In this case, although the Hospital failed to comply with the employee consent portion of Form 941-C, it fulfilled its duty to its employees by reimbursing the residents when the 2000 refund claim was granted.  (Compl. ¶ 17).  Dr. Reuss was in no way injured by the Hospital's failure to obtain his consent.

Dr. Reuss's reliance on <u>Mills</u> is misplaced.   <u>Mills</u> simply holds that when an employee files its own FICA tax refund claim, it has a duty to also file a refund claim on behalf of its employees.   <u>Mills</u> in no way suggests that the Hospital had a duty to notify its employees of refund opportunities or to file on their behalf for years where it elected not to seek a refund.

Because the law does not support the existence of a fiduciary duty on the part of the Hospital, its motion to dismiss on this ground is due to be granted.

### B.   Whether the Statute of Limitations Has Elapsed

In Florida, the statute of limitations runs "from the time the cause of action accrues." § 95.031, Fla. Stat. (2015).   "A cause of action accrues when the last element constituting the cause of action occurs." <u>Id.</u> § 95.031(a).   In claims for breach of fiduciary duty, the last element constituting a cause of action is "damages flowing from the breach." See <u>Crusselle</u>, 59 So. 3d at 1181; <u>see also</u> <u>Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.</u>, 990 F. Supp. 2d 1254, 1271 (M.D. Fla. 2013) ("Claims for breach of fiduciary duty in Florida are subject to a four-year statute of limitations, which begins to run after the breach and resulting damages have occurred." (citing § 95.11(3)(o), Fla. Stat.)).   The so-called "delayed discovery doctrine," providing that the statute of limitations begins to run upon discovery of the last element of the cause of action, does not apply to claims for breach of fiduciary duty.   See <u>Davis v. Monahan</u>, 832 So. 2d 708, 710 (Fla. 2002) ("Aside from the provisions [in the applicable Florida statute] for the delayed accrual of a cause of action in cases of fraud, products liability, professional and medical malpractice, and intentional torts based on abuse, there is no other statutory basis for the delayed discovery rule.").   In <u>Davis</u>, the court limited the application of the delayed discovery doctrine in cases involving a principal-agent relationship to cases "arising out of

11

childhood sexual abuse and repressed memory . . . after considering the unique and sinister nature of childhood sexual abuse." Id. at 712.

Dr. Reuss's cause of action for breach of fiduciary duty accrued, at the latest on April 16, 2009, when he was no longer able to file for a FICA tax refund claim for the year 2005. That was the first time that Dr. Reuss was "damaged" by the Hospital's actions with regard to the last tax year at issue. Generally speaking, a request for a FICA tax refund from the IRS must be filed within three years from the time that the employer filed its quarterly federal tax return.[4] For example, for Quarter 1 of 2005—the latest period on which Dr. Reuss's claim is based—a FICA tax refund claim must have been filed on or before April 15, 2009. Under Florida's statute of limitations for breach of fiduciary duty, Dr. Reuss had four years from that date to file the instant cause of action. See Am Home Assur. Co., 990 F. Supp. 2d at 1271. Because Dr. Reuss filed the Complaint on May 18, 2015—more than four years after April 16, 2009—his claims are time-barred.

As alleged in the Complaint, the Hospital's misconduct deprived Dr. Reuss of a "refund opportunity" for the 2001–2005 tax years. (Compl. ¶ 32 ("[The Hospital breached [its] fiduciary obligation by failing to disclose or otherwise act on the existence of the [2001–2005] 'refund opportunity.'")). Dr. Reuss contends that the Hospital took away his "opportunity" to file for a refund by failing to inform him of the refund's existence. (Id.

---

[4] Each calendar quarter, an employer must file a Form 941 reporting its FICA obligations and income-tax withholding obligations for the quarter. Treas. Reg. § 31.6011(a)-4(a)(1). The form is due one month after the end of the quarter. Treas. Reg. § 31.6071(a)-1(a)(1). Any request for refund related to that quarter's FICA payments must be submitted no later than three years after that filing. 26 U.S.C. § 6511(a) (providing that a "claim for credit or refund of an overpayment . . . shall be filed by the taxpayer within three years from the time the return was filed or two years from the time the tax was paid"). For purposes of the limitations period, all Forms 941 filed for a calendar year are considered filed on April 15 of the succeeding year. 26 U.S.C. § 6513(c)(1).

("This failure prevented residents from learning that similar refund opportunities existed for the years [2001–2005].")). Dr. Reuss's damages from the Hospital's alleged breach— in his own words—are not the refund itself but the "opportunity" to obtain a refund. (Id.). Thus, Dr. Reuss's "damages" occurred when he no longer had such an "opportunity" to file his own FICA tax refund claim for the years 2001–2005. The uncertainty of whether his FICA tax refund claim would have been successful does not change the fact that when the three-year statute of limitations for seeking tax refunds expired, Dr. Reuss lost the "opportunity" to file for a FICA tax refund.[5] Once Dr. Reuss was damaged by the Hospital's alleged misconduct on April 16, 2009, the four-year statute of limitations for breach of fiduciary duty for the 2005 refund was triggered, and in April, 2013—more than two years before Dr. Reuss filed this case—the limitations period elapsed.

Moreover, as discussed below, since Dr. Reuss has brought what is essentially a tax refund claim against his employer, if he is permitted to collect a tax refund from the Hospital after the applicable statute of limitations for tax refunds claims elapsed, "'[i]n effect [Dr. Reuss] [would] have obtained a refund of taxes from the government without . . . being subject to the statutes of limitations imposed by the [Internal Revenue] Code.'" Brennan v. Sw. Airlines, 134 F.3d 1405, 1411–12 (9th Cir. 1988) (last alteration in original) (quoting DuPont Glore Forgan Inc. v. AT&T Co., 428 F. Supp. 1297, 1302

---

[5] Dr. Reuss's argument—that his cause of action accrued in 2012 when the IRS disbursed the 2000 FICA refund—incorrectly assumes that a plaintiff is "damaged" only when the claim becomes meritorious. However, a cause of action does not extend indefinitely so long as its merit is unknown. Relatedly, I disagree with Dr. Reuss's comparison of this case to legal and accounting malpractice cases. (See Doc. 16 at 13–16). In those cases, the plaintiffs did not know whether they had a malpractice claim against their lawyer or accountant until their final judgment was issued. Here, however, regardless of whether the FICA tax refund claim had merit, and regardless of whether the Hospital acted wrongly as to Dr. Reuss, he suffered his damage when he lost his opportunity to file a FICA tax refund claim.

(S.D.N.Y. 1977)). "'This would clearly negate the Congressional purpose in enacting the refund provisions of the Code.'" Id. at 1412 (quoting DuPont, 428 F. Supp. at 1302).

Because Dr. Reuss failed to bring his claim within the applicable limitations period, his claim is untimely and the Hospital's motion to dismiss on this ground is due to be granted.

### C.   Whether Dr. Reuss's Claim is Preempted by 26 U.S.C. § 7422

Finally, Dr. Reuss's claim is, at its core, a claim for a tax refund and is therefore preempted by 26 U.S.C. § 7422 which provides for civil actions for tax refunds.[6] Claims for taxes erroneously collected must be filed with the IRS. Chalfin v. St. Joseph's Healthcare Sys., Civ. No. 2:14-1883 (WJM), 2014 WL 5512286, at *2 (D.N.J. Oct. 31, 2014) (quoting 26. U.S.C. § 7422); Sigmon v. Sw. Airlines, 110 F.3d 1200, 1203 (5th Cir. 1997) (citing 26 U.S.C. § 7422(f)(1), which provides that "[a] suit [for erroneously or illegally assessed or collected taxes] may be maintained only against the United States"). Such "'tax refund suits can be brought only against the United States, not against employers.'" Childers, 36 F. Supp. 3d at 302 (quoting Mills v. Manhattan & Bronx Surface Transit Operating Auth., No. 87 Civ. 8497, 1988 WL 132848, at *2 (S.D.N.Y. Dec. 8, 1988)). Section 7422 exists to protect an employer from liability when it is acting as a collection agent for the Government, "i.e., [as] an intermediary between the taxpayer

---

[6] In part, the Hospital argues that § 7422 "deprives this Court of subject matter jurisdiction because Dr. Reuss failed to comply with its requirements" by failing to file a timely administrative refund claim before filing suit. (Mot. to Dismiss at 24). To this extent, the Hospital's motion to dismiss is brought under Federal Rule of Civil Procedure 12(b)(1) instead of 12(b)(6). However, the issue of whether Dr. Reuss's claim against the Hospital is preempted by § 7422 is a 12(b)(6) issue, not a 12(b)(1) issue, because the question is whether Dr. Reuss has stated a claim for which relief can be granted against the Hospital. The issue of Dr. Reuss's compliance with presuit requirements for bringing a tax refund claim against the government—which would be a jurisdictional prerequisite in a suit against the government—is not before the Court at this time.

and the Government in the collection of taxes." Id. (citing Brennan v. Sw. Airlines Co., 134 F.3d 1405, 1409 (9th Cir. 1998)).

"The Supreme Court . . . describe[s] . . . § 7422 as having an 'expansive reach.'" Id. (citing United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 14–15 (2008)). Section 7422 applies "to any tax refund suit, whether or not labeled as such and whether or not under federal law." Id. (quoting Matthew v. RCN Corp., No. 12 Civ. 0185, 2012 WL 5834917, at *4 (S.D.N.Y. Nov. 14, 2012)). Further, "§ 7422(a) applies to any suit seeking taxes that were erroneously collected, regardless of who is responsible for the erroneous collection." Chalfin, 2014 WL 5512286, at *3. Where an employer is acting as a collection agent for the government, any refund claims arising from the employer's duty to collect funds on behalf of the government may be brought only against the government. See, e.g., id. (holding that medical residents' negligence claim alleging that their employer failed to file the residents' FICA tax refund was actually a tax refund claim); cf. Brennan, 134 F.3d at 1409 (holding that claims brought by passengers against a private airline that erroneously charged an excise tax on airline ticket sales were in fact claims for tax refunds).

Section 7422 does not apply only where there is "completely distinct allegedly unlawful conduct" on the part of the employer that does "not arise out of the [employer's] collection of taxes." See Childers, 36 F. Supp. 3d at 303–04. In Childers, the court reasoned that where the employer did not file for a FICA tax refund but instead "used the value of its own and [the medical residents'] potential refund claims as a bargaining chip in negotiations with the IRS [on an unrelated tax matter], resulting in a more favorable [s]ettlement for the hospital" the employer's "alleged liability . . . stem[med] not from its

collection of FICA taxes but from later, independent actions and omissions." Id. at 303, 308. The medical residents' claims in Childers did not arise out of their employer's collection of taxes "and therefore [did] not implicate the rationale for excusing the employer as a tax collector from liability for tax refunds." Childers, 36 F. Supp. 3d at 303. For that reason, the court found that § 7422 did not preempt a state law claim for breach of fiduciary duty. Id.

Here, the Hospital's conduct is not separate or distinct from the Hospital's role as a collecting agent on behalf of the IRS. The Complaint plainly alleges that the Hospital's wrongful conduct is that it failed to "disclose or otherwise act" on the availability of a FICA tax refund opportunity. (Compl. ¶ 32). In other words, Dr. Reuss's claim essentially is that the Hospital over-collected his FICA taxes on behalf of the IRS and failed to inform him that the IRS was providing an opportunity for a refund of those over-collected taxes. Unlike in Childers, there are no allegations in the Complaint that the Hospital engaged in "distinct allegedly unlawful conduct" such as bargaining away Dr. Reuss's FICA tax refund claims. Rather, the Hospital simply decided not to file FICA tax refund claims for 2001–2005. As discussed in Chalfin, even if an employer "put [its employee] in [his or her] alleged predicament by failing to file certain paperwork with the IRS, [a state law claim against the employer] is still a tax refund case subject to § 7422(a)." See Chalfin, 2014 WL 5512286, at *3. In this case, the Hospital's mere failure to notify Dr. Reuss of the refund opportunity or to file on his behalf is not separate and distinct from the Hospital's responsibility as a collection agent for the IRS.

Because Dr. Reuss is seeking to collect the FICA taxes that the Hospital overpaid in the years at issue, his claim for breach of fiduciary duty is construed as a tax refund

claim, which is preempted by § 7422.  And, because Dr. Reuss has brought this tax refund claim against the Hospital instead of against the government, the Hospital's motion to dismiss on this ground is due to be granted.

## IV.    Conclusion

For the reasons set forth above:  (1) the facts alleged in the Complaint do not establish that the Hospital expressly or impliedly owed a fiduciary duty to Dr. Reuss that required it—with regard to the years for which it decided not to file for a tax refund on behalf of itself—to either notify Dr. Reuss of the refund opportunity or to file on his behalf; (2) the statute of limitations has elapsed on Dr. Reuss's claim for breach of fiduciary duty because it accrued at the latest when Dr. Reuss could no longer file for a refund; and (3) Dr. Reuss's claim for breach of fiduciary duty is actually a claim for a tax refund that is preempted by 26 U.S.C. § 7422 and may not be brought against the Hospital.  Therefore, the Hospital's motion to dismiss must be granted.  In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.    The Motion to Dismiss Class Action Complaint (Doc. 9) is **GRANTED** insofar as it seeks dismissal of the Hospital's Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) and is **DENIED** to the extent it seeks dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).

2.    The Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**.

3.    The Clerk is **DIRECTED** to close this case.

**DONE** and **ORDERED** in Orlando, Florida, on October 2 1 , 2015.

JOHN ANTOON II

United States District Judge

Copies furnished to:
Counsel of Record